**Francis R. LORIAUX, Appellant,**

v.

**CORPORATION COMMISSION of the State of Oklahoma, Appellee.**

No. 45406.

Supreme Court of Oklahoma.

Sept. 25, 1973.

Holliman, Maddux & Pierce by Jerry T. Pierce, Bartlesville, for appellant.

Nathan S. Sherman, Asst. Conservation Atty., Corp. Comm., Oklahoma City, for appellee.

BARNES, Justice:

This appeal evolves from proceedings instituted in this State's Corporation Commission [hereinafter referred to as "Commission"] during 1971, on the application of said Commission's Pollution Abatement Manager, for an order requiring Francis R. Loriaux [Appellant herein] to plug the allegedly abandoned oil and gas wells on two leases [hereinafter referred to as the "Sherwood" and "Koopman" leases] collectively covering a Nowata County quarter section of land.

Loriaux filed an answer denying he had abandoned the leases and averring that he had assigned them to one Hancock in September, 1968, under an agreement allowing said assignee to pull and abandon any of the leases' wells, and in which, as to any

such wells, Hancock agreed to plug them in accord with the Commission's Rules and Regulations.

Thereafter, at a hearing on the matter before one of the Commission's Trial Examiners, evidence was adduced from Loriaux, Hancock, and others. Among other things, it was shown that none of the seventeen unplugged wells on the two leases was producing; that after the last sale of oil from the Koopman lease in January, 1965, the pipeline serving it was removed and that, after Rock Island Oil & Refining Company had quit transporting oil by truck from the Sherwood lease in November, 1966, no production had been obtained from it. Among other things, Loriaux testified that after this cessation of production, he had no intention of abandoning the wells, and "would go over there about every two weeks and pump the water off the wells to try to keep them in good condition and not have the water flood out to the oil zones." Loriaux also testified that he had been semi-retired since October, 1967, because he had double pneumonia and an operation on his leg that had gotten progressively worse and that his doctor then told him he couldn't do any work for at least two years and advised him to get out of the oil business.

Mr. Hancock testified that after he received his lease assignment from Loriaux in September, 1968, he conducted no operations to produce oil from the property, and in May, 1969, assigned it to one Lewis, who also did nothing of that sort, and is now dead.

After the close of the hearing, the Trial Examiner filed his written report recommending that the aforementioned application be granted. Thereafter, the Commission entered its report and order, in which it found that Loriaux, as owner and operator of the subject wells, had failed to comply with the Commission's Rule 601 pertaining to the plugging of such wells, and directed him to plug them in compliance with its Rules and Regulations.

In his present appeal from said order, Appellant Loriaux contends that the Commission's order was erroneously influenced by the undisputed fact that he owned the wells for more than ninety days without producing any oil from them. He calls our attention to the fact that the Commission's Rule 601 contains no direct reference to "production", but only speaks of wells as to which "operations have ceased for a period of ninety (90) days . . ." and such wells as to which drilling operations have not commenced within six months, in which event they may be deemed permanently abandoned. On the basis of his testimony that after production from the subject wells ceased, he periodically pumped the salt water out of them, and had no intention of abandoning them, together with some testimony that core drilling indicated the leases still possessed underground oil reserves, Appellant contends that the order appealed from is supported neither by the evidence nor the Rule the Commission found he violated.

As we have said in previous cases [cited in Gage v. Estep, Okl., 422 P.2d 449, 454], we think this witness' actions speak more forcefully than some of his statements on the witness stand. For an additional application of the "old maxim" quoted therein, see Bryan v. State, 133 Okl. 213, 271 P. 1020. Although, as hereinbefore mentioned, Appellant did testify that he pumped salt water from the wells periodically for an unspecified time after he ceased to produce and sell any oil from the wells, at another place in his testimony he admitted, on cross-examination by the Commission's counsel, that he removed the tubing and rods from the wells "About three months prior to Mr. Hancock's taking over the property"; and this was confirmed by Mr. Hancock, who, by way of explaining why he had not operated the leases after he acquired them from Loriaux in September, 1968, testified:

"A. . . . it would have been impossible to operate it the way it was when I received it.

Q. What do you mean impossible, Mr. Hancock?

A. Well, there was nothing there to operate. The equipment, the biggest part of the equipment was gone. There were no tubing and rods or things like that."

There is no evidence anywhere in the record contradicting or countermanding the testimony above referred to, or purporting to explain how pumping the salt water from the wells [upon which Appellant predicates his present contention that he never ceased to operate them "for a period of ninety (90) days" under Rule 601] could have accomplished this, without rods and tubing in the wells. As the undisputed evidence, including Appellant's own admission before the Commission, shows that he had ceased operation of the wells for a period of at least ninety days before assigning the leases to Hancock, we find no merit to Appellant's argument, and, in it, no cause for reversing the order of the Commission. Said order is therefore affirmed.

All Justices concur.