552 P.2d 387 (1976)
AMAX PETROLEUM CORPORATION, Appellant,
v.
CORPORATION COMMISSION of the State of Oklahoma and Leona Pearce Mattix, Appellees.
No. 47774.
Supreme Court of Oklahoma.
July 13, 1976.
Barth P. Walker and Russell James Walker, Oklahoma City, for appellant.
Harvey H. Cody, Jr., Conservation Atty., Corp. Commission, Oklahoma City, for appellee, Corp. Commission.
*388 DAVISON, Justice:
The manager of pollution abatement of the Corporation Commission of the State *389 of Oklahoma filed an application for an order requiring Amax Petroleum Corporation and Leona Pearce Mattix to plug certain gas wells located in Nowata County, Oklahoma.
L.A. Terrell and Dora Terrell, husband and wife, the then landowners, on April 12, 1937, executed an oil and gas lease, covering the land involved herein, in favor of Whitehill Oil Corporation. Whitehill Oil Corporation drilled and operated gas wells on the land covered by this oil and gas lease. By various assignments this oil and gas lease became the property of American Climax Petroleum Corporation, predecessor to the appellant herein, Amax Petroleum Corporation. Leona Pearce Mattix is the successor of the landowners and lessors, L.A. Terrell and Dora Terrell, who were her parents.
A former employee of Amax Petroleum Corporation testified that appellant owned other oil and gas leases in the area and in late 1957 or 1958 decided to abandon the gas field. At least part of the gas pipeline to the field was sold and all of the wells on the land involved here were shut in in late 1957. There has been no operation of these wells from that date.
On July 28, 1959, approximately two years after the wells were shut in and the sale of part of the pipeline, the appellant, Amax Petroleum Corporation assigned the oil and gas lease back to the landowners, L.A. Terrell and Dora Terrell. The Terrells were eighty or ninety years old at the time of this assignment and died the following year and their daughter, Leona Pearce Mattix, became the owner of the land involved herein. The Terrell's homestead was in an adjoining section. Mrs. Mattix testified that the gas for the homestead came from that section and not from the land involved herein.
Mrs. Mattix testified that neither her parents, the Terrells, or herself ever operated the gas wells in question. It is to be noted that there is no evidence that the wells involved were ever operated after they were shut-in in 1957.
The former employee of Amax Petroleum Corporation at the time of the shut-in also testified that Amax had nine or ten leases in the area at that time. Some four wells were plugged and the others were assigned back to the lessors. Other than that reference to this method of handling the leases the record is silent as to the details of the reassignment to the Terrells.
A field inspector for the Corporation Commission testified that one of the wells is purging and a photograph of this well is included in the evidence and indicates pollution of the surrounding area. He testified that there are four wells on this lease and that they have not been plugged in accordance with the rules and regulations of the Corporation Commission.
The Corporation Commission in its order dismissed this application as to the landowner Leona Pearce Mattix, and ordered the appellant, Amax Petroleum Corporation, to plug the wells.
The appellant presents a number of objections to the Commission's order and we will discuss these propositions in the order they are presented in the briefs.
In appellant's proposition one, it is asserted that under 17 O.S. 1971 § 53, and the Commission's rules and regulations adopted thereunder, that the Commission has no authority to require the plugging of any oil and gas well which has not been abandoned or which is not to be permanently abandoned. The appellee, Commission, agrees with this proposition and consequently, it is merely explanatory of the appellant's second proposition.
The appellant's second proposition asserts that the record does not support the Commission's finding that the wells were abandoned or were to be permanently abandoned prior to the assignment of the lease back to the Terrells, the landowners. This involves not only the facts surrounding the shut-in of these wells in late 1957, but also the circumstances and effect of the assignment of the lease back to the Terrells on July 28, 1959. The question of *390 the legal effect of the assignment back to the landowners suggests the appellant's proposition three which asserts that the order to plug the wells can only be directed to the person responsible to plug them and that the appellant is not that person with respect to the wells involved in this case.
The argument of appellant on these first three propositions must simply be that the wells were not abandoned, but that they were merely assigned to a new lease owner. This approach would simply treat this case as though the wells were temporarily shut-in and then assigned from one lease owner-operator to another lease owner-operator. The record here does not support that argument.
There seems no question but that the wells were abandoned well before the assignment. The assignment came some two years after the wells were shut-in. Mr. Hagen, a former employee of appellant who had been with Whitehill Oil Corporation back as far as 1931 gave the most significant testimony on this point. His direct examination was by appellant's attorney and we would treat his testimony as being presented by the appellant.
Hagen testified concerning the acquisition of oil and gas leases by Whitehill Oil Corporation in this area in 1936, 1937, and possibly 1938, and the drilling. He then testified to the sale by Whitehill of these leases in 1954 to the predecessor of the appellant and his continuing in the employment of its successor as assistant superintendent. Hagen was then asked about the circumstances surrounding the assignment of the lease back to the landowners. In this regard, the record shows the following:
"(Q) Would you relate that, please, if you will, to the Examiner  your knowledge and so forth about it?
(A) I believe it was 1958 or late 1957, they decided to abandon the gas field, that they were going to electric power. This was largely due to the Oolagah Dam; these lines, two lines across what is now the Oolagah reservoir; and we sold all, not all the pipe, part of the pipe line.
(Q) Was that the Nowata gas line that's been mentioned before?
(A) It was sold to Nowata Pipe and Supply Company, part of it, and these wells were shut in at that time.
(Q) Do you mean the wells in Section 20, or just generally wells in the area?
(A) All the wells were shut in at that time."
He also testified that they went back to find out from the landowners and the royalty owners if they wanted any of these wells "and if they didn't, we intended to plug them."
This testimony, along with the evidence that the wells were never thereafter operated, seems to clearly indicate that the appellant had abandoned the wells.
Having concluded that there was abandonment of the wells by the appellant, we reach the real question in this appeal which is raised by appellant's proposition three. Did the assignment back to the landowners of the lease relieve the lease owner-operator, appellant herein, of the obligation to plug the well or did the assignment cast this duty back to the landowners? The question must be answered by viewing the circumstances surrounding the assignment and what the assignee did or should have been expected to do thereafter. Absent such an examination of the facts surrounding the assignment and the events thereafter, the unacceptable result would be reached that a mere assignment of an oil and gas lease back to the landowner, even though it amounted in fact to no more than a release, relieves the lease-operator of the duty to plug. We need not discuss the valid reasons for seeing that abandoned oil and gas wells be plugged.
As we view the whole record in this case, we do not see the assignment here as being one which transferred the *391 operations to a new operator. There is no evidence which would establish that the Terrells could or would operate these wells, and the fact is clear that neither they nor their daughter, Mrs. Mattix, ever operated or attempted to operate them. We hold that under the fact situation here that the assignment to the Terrells did not relieve the appellant of its duty to plug the wells.
Our conclusion is supported by our holding in a somewhat similar case, Loriaux v. Corporation Commission, Okl., 514 P.2d 941 (1973).
In the Loriaux case, supra, there was an assignment made by the lease owner-operator after cessation of production and the assignee and his subsequent assignee never operated the wells and we sustained a Corporation Commission order directing the original lease owner-operator to plug the wells. The instant case suggests one fact that even more strongly supports the Commission's order, and that is while in Loriaux, the lease owner-operator testified that after cessation of production, he had no intention of abandoning the wells and here no such evidence is present. We note here too that in Loriaux, we referred to an earlier oil and gas well plugging case, Bryan v. State ex rel. Shefts Supply Co., Inc., 133 Okl. 213, 271 P. 1020 (1928), wherein we stated:
"We hold, however, that intention to abandon may be inferred from acts rather than expressions of intention, and abandonment may be established by such acts rather than from possibilities of future use."
Appellant's proposition four asserts that 17 O.S. 1971 § 53 violates both the State and Federal Constitution in three respects: (1) It is so vague and indefinite as to be unconstitutional under the due process clauses; (2) It is an unconstitutional delegation of legislative powers; and (3) Its enforcement in certain instances, such as this case, would purport to require persons affected thereby to commit trespass in violation of the deprivation of property clauses.
Title 17 O.S. 1971 § 53 is as follows:
"The Corporation Commission is hereby authorized to prescribe rules and regulations for the plugging of all abandoned oil and gas wells. The same shall be plugged under the direction and supervision of the conservation agents of the Corporation Commission as may be prescribed by the Corporation Commission. All orders and regulations in reference to plugging wells shall be made after general hearing as now prescribed by law for the promulgation of orders by the Corporation Commission."
This section has been in the statutes since its enactment in 1917. This is the primary section at least under which the Corporation Commission acted. In view of our opinion as to the constitutional issue raised, we need not mention other sections that deal with plugging. The brief and our research indicate that the constitutional questions asserted here have never been raised in this Court, although we have had appeals involving actions of the Corporation Commission. Heretofore, the parties and this Court and the Federal Court have proceeded, in the absence of a constitutional attack, on the assumption of the statute's constitutionality. See Bryan v. State, supra, and United States v. 79.9 Acres of Land Etc., Rogers Co., Okl., 459 F.2d 185 (10th CCA, 1972). We now find this statutory provision to be constitutional.
The appellant's position on the statute being vague and indefinite is that it does not say who is to plug the well or when the well is to be plugged, nor has it defined abandonment. While the statute could be more specific, the things about which it could be more specific are certainly implicit in the statute. Thus, the person to plug the well is the lease operator, not a stranger to the operation; and the time to plug is when the well is abandoned and certainly *392 not before. We would assume that a definition of abandonment would add little to resolving specific fact situations where, as here, a question is raised as to whether abandonment has occurred or not.
As to the assertion that there is an unconstitutional delegation of authority, the appellant points again to the failure to specify "who" is to plug and "when" they are to plug. As noted above, we regard this as implicit in the statute. The appellant asserts that it is the legislature's function to determine policy and we do not see the statute wanting on this ground.
The final constitutional argument is that the order of the Corporation Commission herein requires it to commit a trespass on the landowner's property. This argument would simply say that since the well has been abandoned that the oil and gas lease has expired and the lease operator has no right to go on the land to plug its wells. It is noted here that the landowner has indicated no objection to the plugging ordered here. The landowner is likewise governed by the lease he signed and subject to the laws of this State. We see no occasion to decide the question of the landowner's responsibility under the Commission's order requiring the lease owner to plug the wells. The constitutional right suggested by the appellant here involves the landowners and such an issue is not before us.
One final question is suggested by appellant and that involves an order after so much passage of time after abandonment. While this delay is unfortunate, no reason is presented to us as to why this would set aside the lease owner-operator's duties and obligations and we see none. The delay resulted in the failure to plug the wells which the Corporation Commission has held is the appellant's obligation.
The order of the Corporation Commission is affirmed.
All the Justices concur.